Argued and submitted October 14, reversed December 4, 1996

In the Matter of
Crystal Rosillo, a Child.

STATE ex rel STATE OFFICE FOR
SERVICES TO CHILDREN AND FAMILIES,
*Respondent,*

*v.*

Jorge RANGEL,
*Appellant.*

(93J0897; CA A92880)

927 P2d 1118

Hilary E. Berkman argued the cause and filed the brief for appellant.

Mary H. Williams, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Father's parental rights were terminated under ORS 419B.506 and ORS 419B.508. On appeal, we review *de novo* and reverse. ORS 419A.200(5).

Crystal Rosillo, born August 16, 1992, was taken into protective custody by Children's Services Division (CSD)[1] on November 3, 1993. She has been in the custody of CSD since that time. On June 12, 1995, CSD filed a petition to terminate father's parental rights.[2] At that time, CSD did not know the location of father. CSD eventually located father in the Oregon State Penitentiary (OSP).[3] On September 27, 1995, CSD served father with the petition to terminate his parental rights in Salem at OSP. According to father, the petition was his first indication that he was Crystal's father.

Crystal's caseworker, Knowles, visited father at OSP on October 4, 1995. Knowles came prepared to obtain a voluntary relinquishment of father's parental rights, but father refused to relinquish his rights. During the visit, father told Knowles that until he had been served with the petition, he did not know that he was Crystal's father, and that his intent when released from prison was to be a father to her. Knowles testified that he discussed the nature of the termination proceedings with father, asked him if he had attempted to establish himself as Crystal's legal father, and informed him of the importance of building a meaningful relationship with her.

Father was transferred to Denton, Texas, in November 1995 to serve the rest of his Oregon sentence. In December 1995, father sent Knowles a letter and a Christmas card for Crystal. The letter, translated from Spanish, stated:

---

[1] CSD filed the petition in this case. CSD has since been renamed State Offices for Services to Children and Families.

[2] The parental rights of Crystal's mother were terminated some time before the trial.

[3] Father was convicted of delivery of cocaine, felony driving while suspended and failure to appear. He was sentenced to 22 months of imprisonment on the delivery conviction, 12 months of imprisonment on the failure to appear conviction, and 36 months of post-prison supervision. He was placed in custody on December 29, 1993. His expected release date was approximately July 1996.

"My name is Jorge Rangel and I am Crystal Rosillo's father. Allow me to introduce myself in a very bad situation for the moment. Now that I know I have a daughter in your hands and being in jail, to tell you the truth I feel very bad, but I would like you to give me the opportunity to meet her and be responsible for her.

"To tell you the truth, I don't know what she looks like. With your permission, I would like for you to allow me to write her, and I would like to ask you this great favor: I would like to get a picture of her to know her. This is all I ask from you until I get out of this place. When I get out, I will work to pay all I owe for the girl's expenses. Thank you."

The Christmas card said:

"Merry Christmas, Crystal. This is a wish from your father, who does not even know you, but with God's help I will meet you very soon and we'll be together forever, Crystal Rosillo Rangel. Signed Jorge Rangel."

Father never received a response to his request to communicate with Crystal, nor did he receive a photograph.

Before the hearing on the petition to terminate his parental rights, father moved to be transported so that he could attend the hearing in person. In the alternative, he moved for a continuance of the hearing until he was released from prison. The trial court denied both motions, and father participated in the hearing via the telephone from Texas.

The hearing occurred on March 15, 1996. At the hearing, father testified that he did not know that he was Crystal's father until he had been served with the petition to terminate his parental rights. The state presented evidence that mother had filled out a "putative father" statement that claimed that father had seen Crystal before he was imprisoned and that he had given mother a car seat, a crib and $300 for Crystal's expenses. Father denied that those events occurred. Mother did not testify at the hearing. The state also presented evidence that the U.S. Immigration Services had a detainer placed on father and that, upon father's release from prison, it intended to take custody of father and that there would be a hearing to determine whether father would be deported. The trial court ruled:

"I would suspect with a drug conviction he's going to be deported. I think he was probably more than just along for the ride, that he was more than a tree planter and repaired cars. I notice he was capable of hiring the * * * firm. That doesn't come cheap. And I notice he was unable to get optional probation, which most first-time drug offenders get, went straight to the joint.

"The Court's going to find that all the standards have been met by the State, and the Court's going to terminate his parental rights to this child.

"I mean if he cared about the child or cared about the woman, he would have stuck around or checked. Frankly, if he cared about his other two children, he wouldn't have gone to jail for doing drugs."

The trial court terminated father's parental rights pursuant to ORS 419B.506[4] and ORS 419B.508.[5]

Father contends that his parental rights should not be terminated because, at the time the petition was filed, he had a "reasonable or lawful" reason for neglecting his daughter; *i.e.*, he did not know that he was Crystal's father. He also claims that he could not have abandoned Crystal within the meaning of the statutes because he only discovered that he was her father at the time that the petition was filed.

The state has the burden of proving its allegations by clear and convincing evidence. ORS 419B.521. Specifically, ORS 419B.506 requires that the state prove that a parent has "failed or neglected without reasonable or lawful cause to provide for the basic physical and psychological needs of the

---

[4] ORS 419B.506 provides:

"The rights of the parent or parents may be terminated as provided in ORS 419B.500 if the court finds that the parent or parents have failed or neglected without reasonable or lawful cause to provide for the basic physical and psychological needs of the child for *six months prior to the filing of a petition*." (Emphasis supplied.)

[5] ORS 419B.508 provides:

"The rights of the parent or parents may be terminated as provided in ORS 419B.500 if the court finds that the parent or parents have abandoned the child or the child was left under circumstances such that the identity of the parent or parents of the child was unknown and could not be ascertained, despite diligent searching, and the parent or parents have not come forward to claim the child within three months following the finding of the child."

child for *six months prior to the filing of a petition.*" (Emphasis supplied.) ORS 419B.508 contemplates that a father know of the existence of his child before he can be held to have abandoned the child. The only evidence that the state presented regarding father's knowledge of paternity at the time of the filing of the petition was Knowles' testimony about what had been reported in the putative father statement. Mother did not testify at the hearing, and father never had an opportunity to cross-examine her regarding the report. On the other hand, father testified under oath that he did not know that he was the father until he was served with the petition to terminate his parental rights. We conclude that the report in the putative father statement is insufficient to rebut father's in-court testimony and hold that the state has failed to prove by clear and convincing evidence that father knew that he was Crystal's father before the petition to terminate parental rights was filed. Consequently, the state is unable to prove its allegation under either ORS 419B.506 or ORS 419B.508.

Because we reverse on his first assignment of error, we do not need to address father's other assignment of error.

Reversed.